UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHERYL M. CURRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:09-CV-565 CAN |
| | ) |
| MICHAEL J. ASTRUE | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On April 9, 2010, Plaintiff, Cheryl M. Curry ("Curry"), filed her complaint asking this Court to reverse and remand the decision of the administrative law judge ("ALJ"). On July 28, 2010, Defendant, Michael J. Astrue, Commissioner of Social Security, filed his response. On August 6, 2010, Curry filed her reply. This Court now enters its ruling based upon the consent of the parties and 28 U.S.C. § 636(c).

**I.  PROCEDURE**

On October 28, 2005, Curry filed an application for disability insurance benefits ("DIB"), alleging disability beginning on June 17, 2005. This claim was initially denied on April 6, 2006, and then again on May 30, 2006, upon reconsideration. On February 6, 2007, Curry testified at a hearing held before the ALJ. On November 20, 2008, the ALJ issued his opinion denying Curry's application for DIB. The Appeals Council denied review of the ALJ's opinion on October 28, 2009, making the ALJ's decision the final determination of the Commissioner. Curry then filed her complaint in this Court pursuant to 42 U.S.C. § 405(g).

**II.  ANALYSIS**

1

A. Facts

Curry was born on July 18, 1952. She was 52 years old at the onset date of the alleged disability and was 55 years old when the ALJ rendered his decision. Curry completed high school and one year of college. She attended Doree Beauty School in Chicago Heights, Illinois and practiced as a beautician, but has not done that type of work since 1973. Curry has never had a sedentary job. Her most recent job was as a packer at the House of Fara, where she worked for seven years.

1. Medical Evidence

a. Treating Physicians

At the time of the onset of the alleged disability, Curry's primary care physician was Dr. Caroline Bjonback. Dr. Bjonback had been Curry's primary care physician as early as January 1998. On March 24, 2005, Dr. Bjonback noted that Curry had been suffering for the past month with an upper respiratory infection. While Dr. Bjonback found that Curry's lungs had good air entry without any wheezes, crepitations, or rhonchi, Curry did have some harsh breathing sounds. Dr. Bjonback further noted that Curry suffered from chronic bronchitis and continued to smoke. Additionally, the notes indicate that Curry reported that her hands would go numb sometimes, but Dr. Bjonback believed the numbness to be work-related and advised that if it continued, Curry should seek resolution through workman's compensation.

Curry began seeing Dr. James Serwatka as her treating physician on March 8, 2006. Dr. Serwatka concluded that Curry was suffering from chronic obstructive pulmonary disease

(COPD),[1] asthma, hypertension, and had problems with her cervical spine.  On April 24, 2006, Curry had an x-ray performed on her cervical spine.  The x-ray showed narrowing in the disc space at C5-6.  On June 26, 2006, Dr. Serwatka diagnosed Curry with arthritis, mild degenerative disc disease, and joint disease in the lower cervical spine.

On June 27, 2007, Curry began treatment with Dr. John Rogers for neck pain, back pain, and muscle spasms.  Dr. Rogers noted that Curry exhibited some tenderness to palpation on both sides of neck.  He reported that Curry was able to move all of her extremities without difficulty and did not notice any weaknesses in her extremities.  Dr. Rogers prescribed strong pain medication and muscle relaxers and recommended that Curry treat her back pain with moist heat.

Curry returned to Dr. Rogers on July 5, 2007 to be treated for COPD, asthma, anxiety, stress, depression, and back pain.  Curry specifically complained of increased stress, anxiety, and depression because of family issues.  Dr. Rogers prescribed antidepressants to help alleviate Curry's depression.  On August 10, 2007, Curry went for a follow-up examination.  Curry stated that she was feeling better due to her antidepressant, but that the muscle relaxer and pain medication were not helping ease her symptoms and pain.

      b.      <u>Other Examining Physicians</u>

In September 2005, Dr. Siraj Ahmed performed a pulmonary function test on Curry.  Two different scores, the Forced Vital Capacity ("FVC") and the Forced Expiratory Volume in One Second ("FEV1"), comprise the test results.  Curry's FVC was 67% of predicted with a 22% change after bronchodilator while her FEV1 was 62% of predicted with a 23% change after

---

[1] COPD is a disease in which the bronchioles constrict making breathing difficult and typically causes coughing, wheezing, mucas production, chest tightness, and other symptoms; this disease gets progressively worse. National Heart Lung and Blood Institute, http://www.nhlbi.nih.gov/health/dci/Diseases/Copd/Copd_WhatIs.html (last visited Oct. 6, 2010).

bronchodilator, indicating asthma. Dr. Ahmed concluded that Curry suffered from mild obstructive ventilatory impairment and responded well to bronchodilator.

On January 9, 2006, Curry went to Dr. Ralph Inabnit for a Consultative Examination at the request of the Disability Determination Division. In summary, Dr. Inabnit concluded that Curry had COPD, exertional dyspnea, a smoking history, asthma, chronic low back pain, a history of recurrent urinary tract infections, and hypertension.

When consulting with Dr. Inabnit, he reported that Curry complained of low back pain, COPD getting progressively worse, inability to walk more than one block without stopping, and chronic fatigue. At that time, Curry could lift thirty to forty pounds, she smoked a pack of cigarettes per day (and had for the past 30 years), could drive a car, do laundry, and write a letter. Curry denied numbness or tingling in her lower extremities, but she avoided flexing, bending, stooping, pushing, pulling, and repetitive motions.

Upon conducting the examination, Dr. Inabnit noted that Curry had diminished breath sounds, but there was no evidence of wheezing or rhonchi. He tested Curry's range of motion in her cervical spine, upper extremities, lower extremities, and lumbar spine. She generally showed a normal range of motion, but showed a slightly diminished range of motion in her lumbar spine.

On January 12, 2006, Dr. John Heroldt performed the Psychological Consultative Examination at the request of the Disability Determination Division. Curry informed Dr. Heroldt of her depression, which had come and gone over the previous three years. Additionally, she described her typical day as cleaning house, taking care of her fiance's father, cooking, and doing laundry. Dr. Heroldt observed that Curry did not appear to be in pain, she ambulated without problems, she appeared cooperative, and she exhibited no psychotic

4

symptoms. Dr. Heroldt noted during the memory testing and serial sevens test that Curry's memory was below average and her work tempo slow. Dr. Heroldt diagnosed Curry with recurrent, moderate, major depressive disorder, nicotine dependence with physiological dependence, and dependent personality disorder. He gave Curry a Global Assessment of Functioning ("GAF") score of 55 indicating a moderate ability to function. This score meant that Dr. Heroldt believed Curry to have moderate symptoms or moderate difficulty in occupational, social, or school functioning. Dr. Heroldt also stated that Curry was incapable of managing her own funds.

    c. <u>Non-Examining Physicians</u>

On March 3, 2006, Dr. Mark Ruiz, a state agency reviewing physician, completed a physical residual functional capacity ("RFC") assessment form. Dr. Ruiz indicated that Curry had a decreased range of motion in her lumbar spine and could never climb ladders, ropes, or scaffolds, but could occasionally bend, kneel, crouch, crawl, and climb ramps and stairs. Dr, Ruiz also determined that Curry could lift and/or carry 20 pounds on an occasional basis and carry and/or lift 10 pounds frequently. Curry also would be able to stand, sit, or walk for about 6 hours out of an 8 hour workday. Dr. Ruiz also concluded that Curry needed to avoid concentrated exposure to wetness, humidity, and extreme temperatures and also avoid moderate exposure to fumes, odors, dusts, gases, and poor ventilation.

On March 31, 2006, Dr. James Gange, a state agency reviewing psychologist, reviewed Curry's medical records and completed a psychiatric review form. He concluded that Curry did not have a severe mental impairment, even though she did suffer from depression. Dr. Gange also concluded that Curry had mild difficulties in activities of daily living, maintaining social

functioning, and maintaining concentration, persistence, or pace without any episodes of decompensation.

    2.  ALJ Hearing on February 6, 2007

      a.  Curry's Testimony

Curry testified that she has COPD and asthma, which she controls with various asthma medications and inhalers. Due to these conditions, she has difficulty being around fumes and dust. Additionally, exhaustion and shortness of breath would probably prevent her from even walking a block.

Curry also testified that she suffers from migraine headaches about three to four times a month. She used prescription strength headache medicine to treat her headaches but stated that she also needs to lay down and rest for three to four hours. Curry testified that these migraine headaches are caused by stress, tension, and tightness and numbness in her cervical spine. She further testified that a pinched nerve caused the tightness and numbness in her back.

Curry stated that when she stands for too long, she must sit down due to pain shooting up to her neck from her back and then her legs will go numb with more numbness in her right leg. She testified that her doctor advised her to ice her leg and lie down when the numbness and pain get too bad.

Curry also testified that she experiences tendonitis in her hands resulting in numbness and muscle tightness. To assist her, Curry said that she wears braces on her hands.

In terms of mental limitations, Curry testified that she suffers from depression which impairs her ability to focus, to concentrate, and to remember things. She also stated that her depression makes it difficult to remember to take her medications, to do chores, or to finish a

chore she started. Curry testified that some days she just wants to cry or go to bed and sleep, without caring if she lives, and on other days she feels like fighting.

Regarding her daily activities, Curry testified that driving too long will cause a migraine and that she cannot do housework like cleaning, cooking, and laundry, for too long because she gets tired and needs to rest. She stated that she needs to rest because her back and arm muscles tighten up. Curry needs her husband to come with her when she goes grocery shopping for him to lift and carry the heavier items.

          b.      <u>Vocational Expert's Testimony</u>

The ALJ asked the Vocational Expert ("VE") if a hypothetical person with Curry's RFC limitations including, (1) limited exposure to atmospheric conditions such as dust, smoke, chemical fumes and temperature and humidity extremes, (2) inability to stand or walk for more than 75% of an eight hour workday, (3) inability to lift more than twenty pounds occasionally and ten pounds frequently, and (4) inability to handle close regimentation or scrutiny of work or work product, in addition to her age, education, and work experience would be able to work.

The VE first concluded that Curry could return to her past work, classified as a cashier in the national market. He further concluded that based upon the aforementioned factors and limitations, Curry could work as an office worker, mail clerk, information clerk, and shipping, receiver and weigher. The VE testified that 925 jobs were available in Curry's geographical area.

          3.      <u>New Evidence Presented to this Court: Dr. Anton Thompkins</u>

On March 3, 2009, Curry visited Dr. Anton Thompkins, an orthopedic surgeon, on referral from her then primary treating physician, Dr. Rogers. At this initial consultation, Dr.

7

Thompkins noted that the X-rays in Curry's medical history showed degenerative changes at L4-5 and L5-S1, but no other structural abnormalities or changes. He also conducted a physical examination and concluded that Curry's lower extremities were neurologically intact and that Curry exhibited normal sensory and motor capabilities. Dr. Thompkins recommended that Curry undergo an MRI to determine if there were any structural abnormalities that would explain her pain. On April 13, 2009, Curry returned for a follow up visit. Dr. Thompkins noted that the MRI found degenerative disc disease at L4-5 with slight bulging, but there was no evidence of significant nerve compression, only degenerative changes.

He also conducted another physical examination during which he noted Curry demonstrated extreme pain towards any type of motion as well as to direct palpation. Dr. Thompkins classified Curry with standard work restrictions which he believed at that time would be permanent. He further recommended that Curry visit a pain management specialist to learn techniques on how to deal with her pain, particularly since Dr. Thompkins did not believe that any aggressive treatment, like surgery, was needed at that time. Prior to this follow up visit, on March 16, 2009, Dr. Thompkins issued a disability certificate. Within the certificate Dr. Thompkins noted that Curry has a "debilitating back condition" and due to the amount of pain she is in, it is difficult for her to climb stairs.

B.  Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence

as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

  C. <u>Curry's Complaint and Motion for Reversal or Remand</u>

Curry must establish that she is disabled to be entitled to benefits under the Social Security Act. See 42 U.S.C. § 423(a)(1)(D). The Act specifically defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a five part test to determine if the applicant is disabled which the ALJ must follow: (1) determine if the applicant is engaged in "substantial gainful activity;" (2) determine the medical severity of the alleged impairment or a combination of impairments; (3) determine if the impairment matches anything listed in the regulations that qualifies as precluding substantial gainful activity; (4) determine if the residual functional capacity of the applicant precludes engaging in past relevant work; and (5) determine based upon education, work experience, and age if the applicant can engage in any other type of work. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

If the ALJ determines at any step that the applicant is disabled, the process is stopped. However, if the ALJ cannot make a determination or finds at a certain step that the applicant is not disabled, then the process moves onto the next step. 20 C.F.R. § 404.1520(a)(4).

9

An impairment or combination of impairments is considered severe if the applicant's physical or mental ability to perform basic work activities is significantly limited. 20 C.F.R. § 404.1521(a). If the applicant does not meet this requirement, then the applicant is not disabled. 20 C.F.R. § 404.1520(c). In order to be considered severe, the impairment must either cause the applicant's death, or has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. When assessing the severity of an impairment, the applicant's age, education, and work experience are not considered. Id. However, it is still possible for the applicant to have been disabled for a period of time in the past even if the applicant currently does not have a severe impairment. Id.

If the applicant's impairment or combination of impairments meets the requirements outlined in Subpart P, Appendix 1 and also meets the duration requirement, then the applicant is disabled without considering the applicant's age, work experience, or education. 20 C.F.R. § 404.1520(d). Once the ALJ finds that the applicant is not disabled after the first three steps, then the ALJ assesses the RFC. 20 C.F.R. § 404.1520(e). The RFC is the applicant's ability to do physical and mental work activities on a sustained basis despite limitations. Id. Once the RFC is determined, it is compared to the applicant's past relevant work to see if the applicant could still perform that type of work. 20 C.F.R. § 404.1520(f). If the applicant could still perform past relevant work, then the applicant is not disabled. Id. Past relevant work includes any substantial work performed within the last 15 years. 20 C.F.R. § 404.1560(b)(1). The applicant has the burden to prove the first four steps, but upon reaching step five, the burden shifts to the Commissioner. 20 C.F.R. § 404.1520(e).

The issues this Court must resolve are: (1) whether the ALJ's RFC finding is supported

by substantial evidence, and (2) whether the ALJ's findings at steps four and five are supported by substantial evidence.

        1.      <u>The ALJ's RFC finding is supported by substantial evidence</u>.

Curry argues the ALJ's RFC finding is not supported by substantial evidence specifically in regards to the ALJ's credibility determination, the ALJ's lack of reliance on Curry's GAF score and mental impairment, and the ALJ's over-reliance on Curry's activities of daily living.

        a.      <u>Credibility</u>

The ALJ is in the best position to make a credibility determination because the ALJ observes the witnesses and the reviewing court will not disturb the ALJ's credibility determination as long as there is some support in the record. <u>Herron v. Shalala</u>, 19 F.3d 329, 335 (7th Cir. 1994). A credibility determination will not be disturbed unless it is patently wrong. <u>Pope v. Shalala</u>, 998 F.2d 473, 487 (7th Cir. 1993).

Curry argues that the ALJ did not make an accurate credibility determination by not considering Curry's testimony about her lower back pain, her arm impairment, and her migraine headaches when making his determination of Curry's RFC.

This Court finds that the ALJ's credibility determination is supported by substantial evidence. The ALJ stated, "The claimant does not have a medically determinable impairment that reasonably explains all of her symptoms." Tr. 21. Specifically, the ALJ acknowledged that Curry's pulmonary limitations are supported by medical evidence, but that the other symptoms she complained of are not. The ALJ specifically compared Curry's subjective complaints of pain to the objective medical opinion of Dr. Caroline Bjonback who performed a test for muscle strength returned a normal result. Also, Dr. Bjonback did not notice a tremor, refuting Curry's

11

complaints about her arm impairment. The ALJ further notes that Dr. Bjonback could not find any reason for Curry's migraines and the need to sleep as well as for Curry's complaints of lower back pain. Because the ALJ supported his determination with Dr. Bjonback's opinion, this Court finds that the ALJ has sufficiently supported his credibility determination. See Herron, 19 F.3d at 335.

b. State Agency Physician's Opinion

If a doctor's opinion appears to be based on the claimant's exaggerated subjective allegations, then the ALJ may properly reject this opinion. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 2008). Additionally, when the treating and consulting physicians present conflicting evidence, the ALJ has complete discretion in whom to believe as long as that opinion and belief is supported by substantial evidence. Books v. Chater, 91 F.3d 300, 308 (7th Cir. 1995). Furthermore, a treating physician's opinion is entitled to controlling weight in determining whether the claimant should receive benefits if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2). "Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physician and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p at *2. Also, "...the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record." SSR 96-6p at *2. Finally, GAF scores are more probative for assessing treatment options rather than determining functional capacity and a person's disability. Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010).

Curry argues that the ALJ failed in complying with Social Security Ruling ("SSR") 96-6 because as the ALJ did not accord adequate weight to the State agency mental professional and under this SSR ruling the ALJ must consider as evidence the State agency physician's opinion. Curry states that the ALJ did not accurately consider the GAF score assigned to her by Dr. Heroldt and that the ALJ did not accurately consider Dr. Gange's opinion that Curry suffered from depression. Curry asserts that the ALJ "played doctor" by dismissing Dr. Heroldt's opinion as "not insightful," "not persuasive," and "not sophisticated."

This Court finds that the ALJ's opinion reflects his consideration of the opinion of the State agency physician. The ALJ found the opinion to be unpersuasive because Dr. Heroldt appeared to credit everything that Curry told him without considering other evidence. For example, the ALJ notes that Dr. Heroldt believed Curry to have limited cognitive capacity, yet did not take into consideration that Curry attended college. The ALJ also states that he found Curry's behavior with Dr. Heroldt and elsewhere throughout the record demonstrated that Curry has significant awareness and is cognizant of what she must say in order to obtain disability. Earlier in his opinion, the ALJ noted that Dr. Bjonback could find no medical reason why Curry should be on disability. This Court finds that the ALJ was not substituting his own opinion for that of Dr. Heroldt and was not "playing doctor."

      c. <u>Daily Activities</u>

The ALJ is allowed to consider statements made by the claimant regarding her daily activities to determine her RFC. 20 C.F.R. § 404.1529.

Curry argues that the ALJ improperly emphasized and relied upon her daily activities when he made his RFC determination as she is incapable of performing sedentary work.

13

This Court finds that the ALJ did not place an overemphasis on Curry's daily activities. The ALJ noted that Curry's daily activities refute Curry's own statements about her abilities. The ALJ specifically mentioned that Curry cared for her father-in-law by driving, shopping, cooking, and cleaning the house. The ALJ believed that the execution of these activities directly contradicted Curry's statement that she could not perform sedentary work. Sedentary work involves lifting no more than ten pounds and walking and standing for no more than two hours out of the eight hour work day. Haynes v. Barnhardt, 416 F.3d 621, 627 n2 (7th Cir. 2005). Additionally, the ALJ considered and explained his reasoning on relying upon various medical testimony, demonstrating that undue emphasis was not placed upon Curry's daily activities.

This Court finds that the ALJ properly considered Curry's testimony, medical records, and daily activities. Thus, this Court finds that the ALJ's RFC finding is proper.

2. The ALJ's determinations at steps four and five are supported by substantial evidence from the record.

At step four, the ALJ must determine if Curry has the capacity to perform the demands of her past relevant work. See 20 C.F.R. § 404.1520(f). If the ALJ determines that Curry does not have past relevant work or is unable to perform this work, then he must proceed to step five. Id. At step five the ALJ needs to make the determination if Curry can work in any job with her limitations. See 20 C.F.R. § 404.1520(g). The ALJ then creates a hypothetical person who has all of the same limitations and RFC as Curry and asks the VE if there are jobs for that hypothetical person. The ALJ does not have to incorporate limitations into his hypothetical question when those limitations are not supported by medical evidence. Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007).

Curry argues that she cannot perform light work due to additional limitations such as

having to miss work because of migraine headaches, difficulty standing and balancing for extended periods, inability to work with money, and fatigue. However, Curry does not present any testimony in support of these claims other than her own and Dr. Heroldt's, both of whom the ALJ found to be unreliable.

This Court found that the ALJ made a proper determination that Curry's testimony about these symptoms was unreliable and instead relied on the objective medical findings and records available. This Court further found that the ALJ properly weighed Dr. Heroldt's opinion less than other physicians due to other evidence presented. After considering the medical evidence from both treating and non-treating physicians, the ALJ recognized that Curry could not work under certain atmospheric conditions due to lung problems; she would not be able to work under standards of close regimentation which would cause anxiety and distress; she would not be able to stand or walk more than 75% of the eight hour work day; and finally that she would not be able to lift more than twenty pounds on an occasional basis. This Court finds that the ALJ properly determined that Curry was able to perform certain jobs classified as light work.

### 3. New or Material Evidence Presented to the Court

New evidence can be considered by the reviewing court if it is new and material and good cause is shown for failure to submit the evidence earlier. 42 U.S.C. § 405(g). Evidence is "new" if it "was not in existence or available to the claimant at the time of the administrative proceeding." Schmidt v. Barnhart, 395 F. 3d 737, 742 (7th Cir. 2005) (quoting Perkins v. Chater, 107 F. 3d 1290, 1296 (7th Cir. 1997)). Evidence is material if it is reasonably probable that if the evidence had been presented, it would allow for a different ruling by the ALJ. Johnson v. Apfel, 191 F. 3d 770, 776 (7th Cir. 1999).

Curry presents a report from Dr. Thompkins desiring this Court to consider this evidence when reviewing the ALJ's decision. Curry argues that the reports shows that the ALJ erred in his credibility determination.

This Court finds that Dr. Thompkins' records are not new evidence. Dr. Thompkins' tests and conclusions do not offer anything different from the medical testimony in the record. Particularly, Dr. Thompkins' notes are similar to Curry's former treating physician, Dr. Rogers. Both conducted a form of diagnostic imaging (x-ray or MRI) which showed slight bulging at certain discs and both diagnosed Curry with mild degenerative disc disease. While the ALJ did not have Dr. Thompkins' opinion, he did have Dr. Rogers' opinion which provided the same information.. The ALJ considered Dr. Rogers' records and found his assessment that the objective medical tests did not support Curry's claims of pain to be persuasive. Dr. Thompkins diagnosed Curry with same disease as Dr. Rogers. Therefore, this Court will not consider Dr. Thompkins' record because the objective tests do not provide any new evidence that the ALJ did not consider in forming his conclusions.

### III. CONCLUSION

For the above reasons, this Court finds the ALJ's determinations about Curry's RFC and steps four and five in determining a disability were supported by substantial evidence. Therefore, Curry's motion for reverse or remand is **DENIED** [Doc. No. 1]. Accordingly, this Court **AFFIRMS** the ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated: November 2, 2010

                <u>s/Christopher A. Nuechterlein</u>
                Christopher A. Nuechterlein
                United States Magistrate Judge